[Cite as *In re V.H.*, 2022-Ohio-3432.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

IN RE V.H.                                      :
                                               :          No. 111186
A Minor Child                                  :

_____

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** September 29, 2022

_____

Civil Appeal from the Cuyahoga County Court of Common Pleas
Juvenile Court Division
Case No. DL21102351

_____

*Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting
Attorney, and Sarah E. Hutnik, Assistant Prosecuting
Attorney, *for appellee.*

Rachel A. Kopec, *for appellant.*


CORNELIUS J. O'SULLIVAN, JR., J.:

{¶ 1} V.H. ("appellant") appeals from the trial court's October 2021 judgment

adjudicating him delinquent for acts constituting rape (three counts) and gross

sexual imposition (one count) against a four-year old girl ("victim"). After a

thorough review of the facts and pertinent law, we affirm.

**Procedural and Factual History**

{¶ 2} In March 2021, appellant was charged in juvenile court in a four-count complaint with rape and gross sexual imposition he allegedly committed when he was 14 years old against the four-year old victim. The trial court held a hearing on the competency of the child victim and found the victim not competent to testify. Appellee the state of Ohio ("appellee") filed a notice of introduction of child victim statements pursuant to Evid.R. 807; the trial court held a hearing on the state's notice. The state presented three witness at the hearing: (1) the sexual assault nurse examiner ("SANE nurse") who examined the victim; (2) the Cuyahoga County Department of Children and Family Services case worker ("case worker") assigned to the case, and (3) the victim's mother. After the hearing, the trial court found that the state failed to meet its burden under Evid.R. 807 and, therefore, that the victim's statements to those witnesses would be prohibited under the rule.

{¶ 3} The case went to a bench trial in October 2021, at which the following testimony was elicited. In March 2020, the victim stayed for several days at her godmother's house in Maple Heights, Ohio. The godmother was a close friend of the victim's mother. Appellant and his mother were also staying at the godmother's house during the same time the victim was there.

{¶ 4} The victim's mother testified that when she went to pick up the victim from the godmother's house, appellant and the godmother's daughter brought the victim to her. The victim's mother did not know appellant — she had never seen him before. According to the victim's mother, the victim "did not seem pleased." Once they arrived at home, the mother asked the victim if anyone had touched her and

the victim gave her "a look." The mother testified that she was "very concerned" and she went to the godmother's house to confront her. After confronting the godmother, the mother took the victim to the hospital.

{¶ 5} At the hospital, the SANE nurse interviewed and examined the victim "head to toe." The nurse noted that the victim had an abrasion on her upper right arm as well as on her lower left arm. The victim told the nurse that she did not know how she got those injuries.

{¶ 6} During the examination, the victim told the nurse that her cheek was hurting. The nurse found no injury to the victim's cheek. The nurse used the victim's declaration of a hurt body part as a segue into questioning the victim if any other body parts were hurt. The victim told the nurse that her genital area — which she described as her "ta-ta" — hurt. The nurse explained that because "children and adults use different names for various parts of their body" it is her practice to "show a child a diagram and ask them to put a mark on a diagram of what area they're talking about so there is no confusion as to what part of the body the child is referring to." Here, the victim pointed to her vaginal area and called it her ta-ta.

{¶ 7} She told the nurse that a person "poked" her ta-ta "faster and harder." The victim told the SANE nurse that the person also put his "thingy" on her tongue and told her to close her mouth. Further, the person put his hand in her ta-ta area. The victim also said that the person scratched her breasts under her clothes and it tickled. The victim told the nurse that this happened while she was in the basement

looking for her socks. She told the nurse the name of the person who hurt her and that the name began with the letter "B."

{¶ 8} The SANE nurse performed a genital examination and found generalized redness and a potential abrasion to the hymen. She testified that the hymen is very sensitive in prepubescent girls and when a prepubescent girl complains of pain to the area it generally indicates that the hymen has been touch or penetrated in some way. The nurse took swabs from the victim's external genitalia and perianal area, underwear, inner thigh, and breast area for the sexual assault kit.

{¶ 9} Meanwhile, law enforcement officials were at the godmother's house speaking with her, appellant, and appellant's mother. They learned that the godmother, appellant, and appellant's mother were the only residents of the home during the time in question. There is no indication in the record that any other males resided at the home during the relevant time frame. There is also no indication in the record of visitors to the home during the relevant time.

{¶ 10} After obtaining consent from appellant and his mother, the police obtained a buccal swab from appellant.

{¶ 11} A representative from the Ohio Bureau of Criminal Investigations ("BCI") testified as to the results of the scientific testing performed in this case. The BCI representative testified that swabs from the victim's external genitalia and perianal area did not reveal foreign DNA. A swab taken from the inside of the victim's underwear revealed a mixture of DNA of which the victim's DNA was the

major contributor. Male DNA was found in that swab but it was not enough to make a comparison to appellant's DNA. Male DNA was also found on skin swabs taken from the victim's inner thighs and breast area, but also was not enough to make a comparison to appellant's DNA. BCI also performed a Y-STR DNA analysis, which is a specific analysis that tests for male DNA. The testing revealed that the swabs from the victim's external genitalia, inner thighs, and breast area had male DNA but not enough to make comparisons.

{¶ 12} The case worker interviewed the victim and the victim's mother. During the interview with the victim, the case worker engaged in "break the ice" conversation to build rapport with her. For example, the case worker had the victim recite the alphabet. The case worker noted that during her recitation, the victim confused the letter "V" as being "B."

{¶ 13} The victim told the case worker that her body had been hurt by a specific person; she told the case worker the same name, beginning with the letter "B," as she told the SANE nurse was the person who hurt her body.[1] The victim told the case worker that the person who hurt her "pointed at her ta-ta with his ta-ta" and that she sat on the person's lap.

{¶ 14} The police showed a photo of appellant to the victim and asked her if he was the person who hurt her; the victim "shook her head yes."

---

[1] If the letter "V" is substituted for the letter "B" in the name the victim gave, the names sound similar and the "V" name is a diminutive or nickname of appellant's name.

{¶ 15} The victim's mother testified that she has noticed a "tremendous behavior change" in the victim since the incident. She testified that victim has trouble sleeping, talks about what happened to her, and "thinks she could have babies." The SANE nurse testified that a child of the victim's age "does not have the capacity to always tell what is bothering them, and so a change in behavior is an indicator that something could have happened to a child."

{¶ 16} On this evidence, the trial court found appellant delinquent on all four counts and imposed a three-year suspended commitment to the Department of Youth Services, two years of community control sanctions, and sex offender treatment. Appellant appeals, raising the following two assignments of error for our review:

    I.    The trial court erred as a matter of law in finding the Appellant delinquent when there was not sufficient evidence to support the convictions.

    II.    The manifest weight of the evidence did not support the convictions.

**Law and Analysis**

{¶ 17} In reviewing a sufficiency challenge to a juvenile's adjudication of delinquency, this court applies the same standard of review applicable to criminal convictions. *In re L.R.F.*, 2012-Ohio-4284, 977 N.E.2d 138, ¶ 12 (8th Dist.), citing *In re Watson*, 47 Ohio St.3d 86, 91, 548 N.E.2d 210 (1989). This court also applies the same standard of review applicable to criminal convictions in determining whether a juvenile's adjudication of delinquency is against the manifest weight of

the evidence. *In re B.J.*, 8th Dist. Cuyahoga No. 110223, 2021-Ohio-3926, ¶ 36, citing *In re M.P.*, 8th Dist. Cuyahoga No. 93152, 2010-Ohio-2216, ¶ 22.

**Sufficiency of Evidence**

{¶ 18} In his first assignment of error, appellant contends that the evidence was not sufficient to support the delinquency adjudications.

{¶ 19} The test for sufficiency requires a determination of whether the prosecution met its burden of production at trial. *State v. Bowden*, 8th Dist. Cuyahoga No. 92266, 2009-Ohio-3598, ¶ 12. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997). "On review for sufficiency, courts are to assess not whether the State's evidence is to be believed, but whether, if believed, the evidence against a defendant would support a conviction." *State v. Dyer*, 8th Dist. Cuyahoga No. 88202, 2007-Ohio-1704, ¶ 24, citing *Thompkins* at 390.

{¶ 20} Appellant contends that "the only testimony, outside of statements made by the child to other individuals[,] was DNA evidence that did not match [him]." According to appellant, the hearsay statements of the SANE nurse and case worker were improperly allowed at trial because the court previously ruled that they were prohibited under Evid.R. 807.

{¶ 21} Our standard of review on the admission of evidence is whether the trial court abused its discretion. *State v. Sage*, 31 Ohio St.3d 173, 510 N.E.2d 343

(1987). An abuse of discretion means more than an error of law or judgment. Rather, an abuse of discretion implies that the court's decision was unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

{¶ 22} The trial court did not abuse its discretion by admitting the victim's statements to the SANE nurse and case worker. The fact that a child has been deemed incompetent to testify does not necessarily prohibit the admission of the child's statements at a trial or adjudicatory hearing. Under Evid.R. 807, the state may offer a child's out-of-court statement as evidence if the child is under 12, the statement describes a sexual act, and the state satisfies the four additional elements contained within the rule. *State v. Meyerson*, 9th Dist. Summit No. 28549, 2017-Ohio-8726, ¶ 19.

{¶ 23} The four additional requirements the state must show under Evid.R. 807 are that (1) "the totality of the circumstances surrounding the making of the statement provides particularized guarantees of trustworthiness * * *"; (2) the child's testimony "is not reasonably obtainable"; (3) there exists "independent proof of the sexual act * * *"; and (4) the defendant was given notice, at least ten days before trial or hearing, of the content of the statement and the circumstances surrounding it. *Id.*; Evid.R. 807(A)(1)-(4). The rule "contemplates that a pretrial hearing will be conducted at which time * * * an *initial* determination as to the admissibility of the child's statements should be made." (Emphasis added.) *State v. Storch*, 66 Ohio St.3d 280, 612 N.E.2d 305 (1993), paragraph two of the syllabus.

{¶ 24} After a hearing, the trial court here found that the state had only demonstrated the fourth requirement under Evid.R. 807(A) — the notice requirement. In regard to the other requirements, the trial court was "not able to find" that the victim's statements to the SANE nurse and case worker "provide particularized guarantees of trustworthiness and reliability." The court further found, in contravention of the state's position, that its declaration that the victim was incompetent to testify was "insufficient to satisfy the unavailability requirement of Evid.R. 807(A)(2)." Under the third requirement of Evid.R. 807(A), the trial court found that the state failed to show independent proof of the sexual act. Thus, the trial court ruled that the victim's statements were prohibited under Evid.R. 807.

{¶ 25} However, "[t]he State need not satisfy the rigors of Evid.R. 807(A) if [a] child's statement can be admitted through a different hearsay exception." *State v. Lortz*, 9th Dist. Summit No. 23762, 2008-Ohio-3108, ¶ 20. For example, and relevant to this case, Evid.R. 803(4), permits the introduction of

> [s]tatements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment.

Evid.R. 803(4).

{¶ 26} In *State v. Chappell,* 97 Ohio App.3d 515, 646 N.E.2d 1191 (8th Dist.1994), this court held:

> We would not adopt a rigid rule as to what constitutes "diagnosis and treatment" or limit diagnosis and treatment to licensed physicians, as such a narrow holding would undercut the function of nurses, psychiatrists, therapists, and various individuals who treat victims of sexual abuse. We are equally not prepared to hold that a social worker, by merely being a social worker, is automatically included in the category of individuals who can render treatment or diagnose sex abuse victims. The inclusion of a social worker into this select group of care providers must depend on her [or his] function. Where a social worker's function does not include diagnosis or treatment (whether it be mental or physical treatment of a child sex abuse victim), any statement made to the social worker cannot be admissible under the exception to the hearsay rule in Evid.R. 803(4).

*Id.* at 531.

{¶ 27} The SANE nurse testified that she had to learn what happened to the victim so that she could appropriately examine and treat her. The case worker's function was both to determine whether sexual abuse had been indicated and to then follow up on referring the family for appropriate care. As such, we conclude that the victim's statements to both the SANE nurse and the case worker were within the realm of diagnosis and treatment and were therefore properly admissible under Evid.R. 803(4).[2]

---

[2] Because we find that the victim's statements were admissible under Evid.R. 803(4), we need not delve into the trial court's ruling on the admissibility of the statements under Evid.R. 807. Nonetheless, we do note that the other three requirements of Evid.R. 807 — a particularized guarantee of trustworthiness, the victim's testimony was not reasonably obtainable, and there was independent proof of the sexual acts — appear to have been met in this case.

{¶ 28} Appellant also contends that law enforcement's testimony about the victim's photo identification of appellant was improper because the court found the child incompetent to testify.

{¶ 29} This court has previously held that

> because an incompetency ruling is a declaration that the witness is incapable of understanding an oath, or liable to give an incoherent statement as to the subject and cannot properly communicate to the [factfinder], it does not make for a conclusion that all out-of-court statements are per se inadmissible when a witness is declared incompetent.

(Internal citations omitted.) *State v. Rogers*, 8th Dist. Cuyahoga No. 63979, 1993 Ohio App. LEXIS 5880, *17 (Dec. 9, 1993).

> This may be especially true in the case of young children. Simply because a child is deemed incompetent for purposes of testifying does not make the child's statements per se inadmissible. Where the totality of the circumstances fail to demonstrate a lack of reliability or trustworthiness, the statements should be admitted if they fall within the hearsay exception. The credibility of the statements may then be evaluated by the trier of fact.

*In re D.L.*, 8th Dist. Cuyahoga No. 84643, 2005-Ohio-2320, ¶ 28, citing *State v. Dever*, 64 Ohio St.3d 401, 410, 596 N.E.2d 436 (1992).

{¶ 30} Admittedly the statements in *Rogers*, *In re D.L.*, and *Dever* are relative to hearsay for treatment or diagnosis under Evid.R. 803(4). However, the same logic can be extended to a victim's pretrial identification. We recognize that the method of obtaining the photo identification in this case was unconventional but under the totality of circumstances, we find no abuse of discretion by the trial court in admitting it.

{¶ 31} Having found that there was no abuse of discretion by the trial court in admitting the victim's statements to the SANE nurse and case worker, as well as the victim's pretrial identification of appellant, we now consider whether the evidence was sufficient to support the delinquency adjudications.

{¶ 32} Appellant was found delinquent on three counts of rape in violation of R.C. 2907.02(A)(1)(b), which provides that "[n]o person shall engage in sexual conduct with another" when the other person is less than 13 years old. Appellant was also found delinquent on one count of gross sexual imposition in violation of R.C. 2907.05(A)(4), which provides that "[n]o person shall have sexual contact with another" when the other person is less than 13 years old.

{¶ 33} The state presented evidence that, if believed, supported a count of vaginal rape — the victim's statement to the SANE nurse that the person "poked" her ta-ta "faster and harder," as well as her statement to the case worker that the person "pointed at her ta-ta with his ta-ta." The state presented sufficient evidence that, if believed, supported a count of oral rape — the victim's statement to the nurse that the person put his "thingy" on her tongue and told her to close her mouth. The state presented sufficient evidence that, if believed, supported a count of digital rape — the victim's statement to the nurse that the person put his hand in her ta-ta area. The state presented sufficient evidence that, if believed, supported a count of gross sexual imposition — the victim's statement to the nurse that the person scratched her breasts under her clothes and it tickled.

{¶ 34} Other evidence presented by the state is sufficient to support the delinquency adjudications. Namely, (1) the SANE nurse's testimony that the hymen is very sensitive in prepubescent girls and when a prepubescent girl complains of pain to the area it generally indicates that the hymen has been touch or penetrated in some way; (2) the nurse's testimony that the victim's hymen area had generalized redness; (3) the presence of male DNA on the swabs from the victim's underwear, external genitalia, inner thighs, and breast area; (4) after accounting for the victim's confusion of the letter "V" for "B," the similarity of the name she gave as her offender to the diminutive of appellant's name; (5) appellant's opportunity to commit the crimes as he was staying at the godmother's house at the same time as the victim was, and (6) the victim's photo identification of appellant as the person who hurt her.

{¶ 35} We further note that appellant's claim that the DNA recovered from the victim did not match his DNA is misleading. The testimony was not that his DNA was excluded, rather it was that the DNA swabs were insufficient for comparison purposes.

{¶ 36} The evidence was sufficient to support the delinquency adjudications and the first assignment of error is overruled.

**Manifest Weight of the Evidence**

{¶ 37} A manifest weight challenge questions whether the state met its burden of persuasion. *Bowden*, 8th Dist. Cuyahoga No. 92266, 2009-Ohio-3598, at ¶ 12. A reviewing court "'weighs the evidence and all reasonable inferences,

considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [trier of fact] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *Thompkins*, 78 Ohio St.3d at 387, 678 N.E.2d 541, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).  A conviction should be reversed as against the manifest weight of the evidence only in the most "exceptional case in which the evidence weighs heavily against the conviction." *Id.*

{¶ 38} The allegations in this case came to light immediately after the victim stayed overnight for a number of days in the same house as appellant.  She was examined in close proximity to the commission of the acts, and she told the SANE nurse of the acts committed against her.  Upon examination, the nurse found that the victim's hymen area had generalized redness, a condition indicative in a child the victim's age that the hymen had been touch or penetrated in some way.  Further, testing of swabs from the victim's underwear, external genitalia, inner thighs, and breast area revealed the presence of male DNA.  There is no indication in the record that any male other than appellant was at the godmother's house during the time in question.

{¶ 39} The victim named her offender to both the SANE Nurse and the case worker — a name beginning with the letter "B."  The evidence showed that the victim generally confuses the letter "V" as "B."  If the letter "V" is substituted for the letter "B" in the name the victim gave, the names sound similar, and the "V" name is a diminutive or nickname of appellant's name.

{¶ 40} After weighing the evidence, all reasonable inferences, and the credibility of the witness, we find that the trial court did not lose its way in rendering the delinquency adjudications against appellant in this case. There is no manifest miscarriage of justice and this case is not an exceptional case requiring a new trial. The second assignment of error is therefore overruled.

{¶ 41} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to the common pleas court, juvenile division, to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
CORNELIUS J. O'SULLIVAN, JR., JUDGE

SEAN C. GALLAGHER, A.J., and
MARY J. BOYLE, J., CONCUR