[Cite as *State v. Sanchez*, 2024-Ohio-581.]

**COURT OF APPEALS OF OHIO**

**EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA**

STATE OF OHIO,                          :

    Plaintiff-Appellee,          :

                                                             No. 112774

    v.                                         :

ANTONIO M. SANCHEZ,                     :

    Defendant-Appellant.         :

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** February 15, 2024

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-22-673984-A

***Appearances:***

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, Caroline Maver and Frank Romeo Zeleznikar, Assistant Prosecuting Attorneys, *for appellee*.

Law Office of John T. Forristal and John T. Forristal, *for appellant*.

SEAN C. GALLAGHER, J.:

{¶ 1} Appellant Antonio M. Sanchez ("appellant") appeals his convictions for rape and gross sexual imposition in this case. Upon review, we affirm.

{¶ 2} On September 20, 2022, the appellant was charged with five counts of rape, a felony of the first degree, in violation of R.C. 2907.02(A)(1)(b). During trial, Counts 1, 3, and 5 were amended to gross sexual imposition, a felony of third degree, in violation of R.C. 2907.05(A)(4). Counts 2 and 4 remained as charged for rape. The victim in this case is appellant's stepdaughter, who was 12 years old when the charges were brought. The case proceeded to a jury trial.

{¶ 3} The victim testified that since she was seven or eight years old, a little after her brother was born, appellant would go into her room when she was sleeping at night and touch her with his hand on her front part and on her back part, sometimes on the outside of her underwear and sometimes on the inside of her underwear. She testified that the touching occurred once or twice a week up until she spoke to the police when she was 11 years old. The victim further testified that, at times, appellant would use his finger to go inside her front part, that it would hurt, but that this did not happen all the time. The victim testified that when appellant would touch her inside her underwear on her back part, he would touch her on the outside of her bottom. The victim provided other details about the touching that occurred.

{¶ 4} The victim testified to an incident that occurred on September 1, 2022, in which the appellant touched her with his hand inside of her underwear on the outside of her bottom, and her mom came into the room. Later that morning, the victim told her mom that appellant had been touching her once or twice a week while she was sleeping. The victim told her mother once before about an incident

that occurred when she was stretching, and she was told to let her mother know if it happened again. The victim testified that she did not tell her mother about further incidents because she was scared.

{¶ 5} The victim's mother testified that in the early morning hours of September 1, 2022, she walked in on appellant standing over the victim's bed and he was messing with the covers. She saw that his hands were on top of the covers, and when she turned on the light, he started messing with the curtains. Later that morning, upon talking with the victim, the victim's mother learned that the victim was being touched by appellant at night. The victim's mother took the victim to the police station. The victim's mother testified that the victim's grandmother had previously raised concerns, but at that time, she chose to listen to appellant.

{¶ 6} The victim's grandmother testified to instances where she observed appellant being inappropriate with the victim. The victim's grandmother also testified that two weeks before the police became involved in the matter, the victim disclosed to her that appellant had been hurting her.

{¶ 7} The victim made disclosures concerning the sexual abuse to the police, the social worker, and the sexual assault nurse examiner ("SANE nurse"). Among other disclosures, the victim disclosed to the SANE nurse that appellant digitally penetrated her vagina about four days earlier. The SANE nurse examined the victim and noted "[r]edness near vaginal opening/labia minora area." Other testimony and evidence were presented, which this court has reviewed.

**{¶ 8}** The jury found appellant guilty of Counts 1, 3, and 5 as amended to gross sexual imposition, with each count specifying different date ranges for the offense. The jury also found appellant guilty of Count 2 as charged for rape by digital penetration of the vagina occurring on or about August 1, 2022, to August 30, 2022. The jury found appellant not guilty of Count 4 for rape as similarly charged with the date range of offense being on or about October 25, 2018, to October 24, 2019. The trial court imposed a total aggregate prison term of life in prison with the possibility of parole after 16 years and ordered appellant to register as a Tier III sex offender.

**{¶ 9}** Appellant timely filed this appeal. He raises four assignments of error for review.

**{¶ 10}** Under his first assignment of error, appellant claims the trial court erred in permitting the social worker and SANE nurse to testify about out-of-court statements made by the victim because he claims the statements did not fall under the Evid.R. 803(4) hearsay exception.

**{¶ 11}** A trial court has broad discretion in determining whether a declaration should be admissible as a hearsay exception. *State v. Dever*, 64 Ohio St.3d 401, 410, 596 N.E.2d 436 (1992), citing *State v. Rohdes*, 23 Ohio St.3d 225, 229, 492 N.E.2d 430 (1986). Evid.R. 803(4) states that the following are not excluded by the hearsay rule: "Statements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment."

{¶ 12} This court has previously upheld testimony by SANE nurses and social workers regarding what a minor child victim told them, provided it was within the realm of medical diagnosis and treatment. *See, e.g., In re M.P.*, 8th Dist. Cuyahoga No. 111608, 2023-Ohio-925, ¶ 29; *In re V.H.*, 8th Dist. Cuyahoga No. 111186, 2022-Ohio-3432, ¶ 27. Additionally, "courts have acknowledged the 'dual role' — medical diagnosis/treatment and investigation/gathering of evidence — of social workers who interview a child who may be the victim of sexual abuse." *State v. Fears*, 8th Dist. Cuyahoga No. 104868, 2017-Ohio-6978, ¶ 37, citing *State v. Arnold*, 126 Ohio St.3d 290, 2010-Ohio-2742, 933 N.E.2d 775, ¶ 33. The child's statements may be admitted at trial pursuant to Evid.R. 803(4) if they were made for the purpose of diagnosis and treatment. *Fears* at ¶ 37, citing *State v. Muttart*, 116 Ohio St.3d 5, 2007-Ohio-5267, 875 N.E.2d 944, ¶ 46.

{¶ 13} Appellant asserts that the detective was present during the social worker's interview of the victim and argues that the primary purpose of the interview was testimonial. Appellant also asserts that the detective sent the victim to the hospital and that the victim did not receive any treatment. We are not persuaded by these or other assertions made by appellant.

{¶ 14} In this matter, the victim's disclosures to the SANE nurse and to the social worker were made for purposes of diagnosis and treatment. The victim identified where and how she had been touched, she provided the time frame of the abuse, and she disclosed other information reasonably pertinent to diagnosing her and to determining necessary medical and/or psychological treatment. The social

worker testified that the purpose of doing a non-leading interview from a children services' standpoint is to listen to the child's disclosures, assess safety, and make recommendations for medical and psychological assessments. The SANE nurse testified to asking questions for safety reasons and to gain information pertinent to the examination and treatment of the patient. The trial court did not abuse its discretion in admitting the child's statements under Evid.R. 803(4).

{¶ 15} Furthermore, to the extent any of the statements being challenged were inadmissible hearsay, no objection was raised to this testimony at trial and plain error is neither argued nor shown. In order to find plain error, the error must be obvious, and it must have been determinative of the outcome of the trial. *See State v. Arnold*, 147 Ohio St.3d 138, 2016-Ohio-1595, 62 N.E.3d 153, ¶ 65, citing *State v. Perez*, 124 Ohio St.3d 122, 2009-Ohio-6179, 920 N.E.2d 104, ¶ 181. Here, the victim herself testified to the sexual-abuse incidents and to her disclosures, and much of the challenged testimony was cumulative to other testimony and evidence provided in the case. The first assignment of error is overruled.

{¶ 16} Under his second assignment of error, appellant claims he was denied his due process rights by prosecutorial misconduct during the closing argument.

{¶ 17} The test for prosecutorial misconduct in closing arguments is "'whether the [prosecutor's] remarks were improper and, if so, whether they prejudicially affected substantial rights of the defendant.'" *State v. Powell*, 132 Ohio St.3d 233, 2012-Ohio-2577, 971 N.E.2d 865, ¶ 149, quoting *State v. Smith*, 14 Ohio St.3d 13, 14, 470 N.E.2d 883 (1984). "Prosecutors are granted wide latitude in

closing argument, and the effect of any conduct of the prosecutor during closing argument must be considered in light of the entire case to determine whether the accused was denied a fair trial." *Id.*, citing *State v. Maurer*, 15 Ohio St.3d 239, 266, 269, 473 N.E.2d 768 (1984). "The touchstone of the analysis 'is the fairness of the trial, not the culpability of the prosecutor.'" *Id.*, quoting *Smith v. Phillips*, 455 U.S. 209, 219, 102 S.Ct. 940, 71 L.Ed.2d 78 (1982).

{¶ 18} Appellant argues that the prosecutor improperly expressed a personal belief about the victim's credibility and prejudiced appellant's right to a fair trial. Appellant references the prosecutor's comments about the victim's demeanor in the courtroom. The prosecutor stated that "[the victim] walked in this courtroom uncomfortable. She visibly did not look like she wanted to be here." The prosecutor further stated as follows:

> Her body language, you know, I ask you to remember that. About how she walked in this courtroom. About how she scurried past the Defense table. About how she couldn't even look in this direction when she was up there. I ask you to recall how she was when I started to ask her to identify the defendant. How she was when I started to ask her about the stretching. When she couldn't even get any words out.

The prosecutor asked the jury to "take that into consideration when you're talking about credibility * * *."

{¶ 19} We recognize that a prosecutor may not express a personal belief or opinion as to the credibility of a witness. *State v. Graham*, 164 Ohio St.3d 187, 2020-Ohio-6700, 172 N.E.3d 841, ¶ 96, citing *State v. Williams*, 79 Ohio St.3d 1, 12, 679 N.E.2d 646 (1997). However, here, the prosecutor did not vouch for the

witness's credibility or go beyond the evidence presented at trial. Rather, the prosecutor reminded the jury of what they saw when the victim entered the courtroom and when she was on the witness stand, and the prosecutor asked the jury to take the victim's demeanor in the courtroom into consideration. The prosecutor's comments were permissible. *See State v. Middlebrooks*, 6th Dist. Lucas No. L-08-1196, 2010-Ohio-2377, ¶ 35; *see also State v. Jackson*, 107 Ohio St.3d 53, 2005-Ohio-5981, 836 N.E.2d 1173, ¶ 117-120. Furthermore, even if any of the remarks were improper, it cannot be said, in light of the entire case, that appellant was denied a fair trial. The second assignment of error is overruled.

{¶ 20} Under his third assignment of error, appellant claims the trial court erred in denying his Crim.R. 29 motions.

{¶ 21} "'A motion for acquittal under Crim.R. 29(A) is governed by the same standard as the one for determining whether a verdict is supported by sufficient evidence.'" *State v. Spaulding*, 151 Ohio St.3d 378, 2016-Ohio-8126, 89 N.E.3d 554, ¶ 164, quoting *State v. Tenace*, 109 Ohio St.3d 255, 2006-Ohio-2417, 847 N.E.2d 386, ¶ 37. "'The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.'" *Id.*, quoting *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus. When evaluating the sufficiency of the evidence, a reviewing court considers "whether the evidence, 'if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt.'" *State v. Pountney*, 152 Ohio St.3d

474, 2018-Ohio-22, 97 N.E.3d 478, ¶ 19, quoting *Jenks* at paragraph two of the syllabus.

{¶ 22} Appellant was convicted on Counts 1, 3, and 5 as amended to gross sexual imposition ("GSI") in violation of R.C. 2907.05(A)(4), with each count specifying different date ranges for the offense. R.C. 2907.05(A)(4) provides in pertinent part that "[n]o person shall have sexual contact with another * * * when * * * [t]he other person * * * is less than thirteen years of age, whether or not the offender knows the age of that person." R.C. 2907.01(B) defines "sexual contact" as "any touching of an erogenous zone of another, including without limitation the thigh, genitals, buttock, pubic region, or, if the person is a female, a breast, for the purpose of sexually arousing or gratifying either person." As this court has previously recognized: "Proof of a sexual gratification purpose does not require direct evidence of arousal or gratification. A 'trier of fact may infer that a defendant was motivated by a desire for sexual arousal or gratification from the totality of the circumstances.'" *State v. Kalka*, 8th Dist. Cuyahoga No. 106339, 2018-Ohio-5030, ¶ 31, quoting *State v. Edwards*, 8th Dist. Cuyahoga No. 81351, 2003-Ohio-998, ¶ 22.

{¶ 23} Appellant was also convicted on Count 2 as charged for rape in violation of R.C. 2907.02(A)(1)(b) by digital penetration of the vagina occurring on or about August 1, 2022, to August 30, 2022.[1] R.C. 2907.02(A)(1)(b) provides in pertinent part that "[n]o person shall engage in sexual conduct with another * * *

---

[1] Because appellant was found not guilty of Count 4 for rape, which alleged an earlier time frame, any argument as to Count 4 is moot.

when * * * [t]he other person is less than thirteen years of age, whether or not the offender knows the age of the other person." R.C. 2907.01(A) defines "sexual conduct" in relevant part as "without privilege to do so, the insertion, however slight, of any part of the body * * * into the vaginal or anal opening of another. Penetration, however slight, is sufficient to complete vaginal or anal intercourse."

{¶ 24} Our review of the record reflects the victim testified that since she was seven or eight, appellant would enter her room at night while her mother was at work or sleeping and that he would touch her vagina and/or her bottom with his hand or fingers. It could be reasonably inferred from the circumstances that appellant was touching the victim for the purpose of his own sexual arousal or gratification. The victim further testified that this touching continued to happen one or two times every week until she was 11 years old and talked to the police. Insofar as appellant asserts that only general accusations were made and argues there were vague references to "it," any reasonable trier of fact could have determined from the vicitm's entire testimony that "it" referred to the touching she described, which had been repeatedly going on since she was seven or eight. The evidence was sufficient to establish the offenses occurred during the alleged time frames.

{¶ 25} The victim also testified to digital penetration of her front part and stated it hurt, but she testified this did not happen all the time. She disclosed to the SANE nurse that about four days prior to September 1, 2022, the appellant "put his hands, fingers in my vagina and bottom." The SANE nurse noted redness near the victim's vaginal opening during the physical examination of the victim.

{¶ 26} After viewing this and the other testimony and evidence presented in a light most favorable to the prosecution, we find that any rational trier of fact could have found the essential elements of the crimes proven beyond a reasonable doubt. The third assignment of error is overruled.

{¶ 27} Under his fourth assignment of error, appellant claims his conviction is against the manifest weight of the evidence.

{¶ 28} When evaluating a claim that a verdict is against the manifest weight of the evidence, "we review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether in resolving conflicts in the evidence, the [trier of fact] clearly lost its way and created such a manifest miscarriage of justice that we must reverse the conviction and order a new trial." *State v. Wilks*, 154 Ohio St.3d 359, 2018-Ohio-1562, 114 N.E.3d 1092, ¶ 168, citing *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997). Reversing a conviction based upon the weight of the evidence should occur "'only in the exceptional case in which the evidence weighs heavily against the conviction.'" *Thompkins* at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

{¶ 29} The record in this case reflects that the victim provided detailed and credible testimony regarding the touching that occurred one or two times a week during the alleged time frames. Eventually, the victim's mother walked in on appellant standing over the victim's bed and messing with the sheets, and the victim told her mother that appellant had been touching her. The victim also had told her

grandmother two weeks prior that appellant had been hurting her. The victim made consistent disclosures regarding the touching that had occurred, and although the victim made disclosures that appellant put his finger inside her vagina and her bottom, she clarified in her testimony that appellant put his hand inside her underwear "on her bottom" and that she "didn't mean that he actually went inside of it." Any inconsistencies or discrepancies involved did not render the verdict against the manifest weight of the evidence. The victim further disclosed appellant digitally penetrated her vagina about four days before September 1, 2022, and during the victim's physical exam, redness was noted in that area. Other testimony and evidence were presented, which this court has reviewed.

{¶ 30} After reviewing the entire record, weighing the evidence and all reasonable inferences, and considering the credibility of the witnesses, we do not find the trial court clearly lost its way and created such a manifest miscarriage of justice that the adjudication must be reversed. Although appellant challenges the testimony and evidence that was provided, this is not the exceptional case in which the evidence weighs heavily against the conviction. We are not persuaded by appellant's arguments otherwise. The fourth assignment of error is overruled.

{¶ 31} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's

convictions having been affirmed, any bail pending appeal is terminated.  Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


_____
SEAN C. GALLAGHER, JUDGE

KATHLEEN A. KEOUGH, A.J., and
FRANK DANIEL CELEBREZZE, III, J., CONCUR